732 So.2d 994 (1999)
SOUTHERN ENERGY HOMES, INC.
v.
Pennie O. LEE.
Southern Energy Homes, Inc.
v.
Alicia Tanks and Essie M. Goodwin.
Southern Energy Homes, Inc.
v.
Barbara G. Shields and Lillie R. Coleman.
Southern Energy Homes, Inc.
v.
Mary Frances Gardner and Travis Gene Thornton.
1970105 to 1970107 and 1970298.
Supreme Court of Alabama.
January 8, 1999.
Rehearing Dismissed June 11, 1999.
*995 John Martin Galese and Jeffrey L. Ingram of John Martin Galese, P.A., Birmingham, for appellant.
R. Bradford Wash of Lucas, Alvis & Wash, P.C., Birmingham; and William L. Utsey and J. Jefferson Utsey of Utsey, Christopher, Newton & Utsey, Butler, for appellees.
ALMON, Justice.
The question presented by these appeals is whether a written warranty governed by the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq., may require a consumer to submit to arbitration. The Federal Trade Commission has expressly stated that such written warranties may not provide for binding arbitration, and the United States District Court for the Middle District of Alabama has so held. Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D.Ala.1997), aff'd, 127 F.3d 40 (11th Cir.1997) (table); Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala. 1997).
These cases are unlike Wilson and Boyd in that the arbitration clauses at issue here are contained in the manufacturer's written warranty, whereas in those cases the question was whether the manufacturer could invoke the arbitration clause in the sales contract, to which it was not a party. Through extended discussion and analysis, the Wilson court held that the manufacturer could not invoke the arbitration clause, both because it was not a party to the sales contract and, pertinent here, because allowing it to do so would contravene the Magnuson-Moss Act. This holding was repeated in Boyd, in which the court then proceeded to decide whether the Magnuson-Moss Act precluded the seller from invoking the arbitration clause in its sales contract to require binding arbitration of implied warranty claims against it. The Boyd court held that the Magnuson-Moss Act's prohibitions against binding arbitration applied only to written warranties, not to implied-warranty claims against a party that had not issued a written warranty.
Boyd stated in footnote 9 the following:
"It is important to note that the court is not now confronted with a claim *996 where a consumer seeks to pursue both written and non-written warranty claims against a warrantor. Therefore, the court need not address the interesting question of whether the Magnuson-Moss Act would restrict binding arbitration of the non-written warranty claim as well, in particular if it were closely related to, or intertwined with, the written warranty claim. Although this issue could have been raised in Waverlee Homes, it was not."
981 F.Supp. at 1435, n. 9 (emphasis in original). The court's reservation of this question could apply, however, only to a situation where an issuer of a written warranty can invoke some arbitration clause other than one in its written warranty as a bar to a legal action on implied-warranty claims against it. This is clear from the repeated references in both Wilson and Boyd to the fact that the Magnuson-Moss Act prohibits the inclusion in a written warranty of a provision requiring binding arbitration.
Both Wilson and Boyd quote a comment by the Federal Trade Commission regarding its rules promulgated pursuant to the Magnuson-Moss Act; that comment concludes: "However, reference within the written warranty to any binding, nonjudicial remedy is prohibited by the Rule and the Act." Boyd, 981 F.Supp. at 1438, quoting 40 Fed.Reg. 60,168, 60,211 (1975) (emphasis added); Wilson, 954 F.Supp. at 1539, quoting the same provision. Wilson makes several unequivocal statements that the Magnuson-Moss Act prohibits a warrantor from including a binding arbitration clause in a written warranty. For example:
"Had Waverlee [the manufacturer/warrantor defendant] sought to include, in its warranty, the type of absolute bar on judicial remedies it is seeking here, it would have been in clear and direct violation of the Magnuson-Moss Act."
954 F.Supp. at 1539. Boyd reiterates this holding. Although it relies principally upon Wilson to hold that the manufacturer/ warrantor could not rely upon the arbitration clause in the sales contract because it was not a signatory to that contract, the Boyd court notes in footnote 8 that "the court sees no reason why its holding in [Wilson], that under the Act such arbitration clauses may not be enforced by a manufacturer who offers a written warranty to the purchaser, should not apply to Homes of Legend. 954 F.Supp. at 1537-40." 981 F.Supp. at 1434-35, n. 8.
We refer the reader to the statutory-and legislative-history analysis in Wilson by which the court concluded that Congress, in the Magnuson-Moss Act, precluded the use of binding arbitration clauses in written warranties. Suffice it to say that although several sections of the Magnuson-Moss Act make reference to informal dispute-resolution procedures or mechanisms, those and other provisions also make it clear that a consumer is to have access to a judicial remedy. In short, a warranty may expressly set forth an informal dispute-resolution mechanism and may make the use of that mechanism a prerequisite for filing a court action, but it may not provide that the use of such a mechanism is binding or that it is a bar to a court action. See 15 U.S.C. § 2310; Wilson, 954 F.Supp. at 1537-40, and authorities cited therein.
The dissent discusses the fact that Boyd limits the holding of Wilson in regard to arbitration of implied-warranty claims where the motion to compel arbitration is not based on an arbitration clause in a written warranty. Boyd does not affect the holding in Wilson that the Magnuson-Moss Act precludes a written warranty from including a binding arbitration clause. The court in Boyd was addressing an implied-warranty claim against a seller, not an issuer of a written warranty, so Boyd does not affect the question whether an invalidly included arbitration clause in a written warranty may affect the consumer's implied-warranty claims against the warrantor. All that Boyd pertains to is an implied-warranty claim against a seller *997 that did not issue a written warranty but included an arbitration clause in the sales contract.
The dissent also notes that the FTC has stated that consumers and warrantors may agree to binding arbitration after an informal dispute-settlement procedure has failed to achieve a mutually agreeable result. 732 So.2d at 1006 n. 20, citing Boyd, 981 F.Supp. at 1437 (quoting 40 Fed.Reg. 60,168, 60,211 (1975)). However, this refers to post-dispute arbitration agreements.
Randolph v. Green Tree Financial Corp., 991 F.Supp. 1410 (M.D.Ala.1997), does nothing to call the above-stated holdings of Wilson and Boyd into question. The arbitration clause in question in Randolph was included in an installment sales contract, not a warranty, and the complaint did not even state any warranty claims; instead, the plaintiff alleged violations of the Truth-in-Lending Act ("TILA") and the Equal Credit Opportunity Act ("ECOA"). The only mention in Randolph of Wilson and Boyd comes at pages 1425-26, in the court's January 5, 1998, order on a "motion for reconsideration." The Randolph court notes that "in Boyd, the court ordered the arbitration of non-written and implied warranty claims arising under the Magnuson-Moss Act." 991 F.Supp. at 1425. The Randolph court did not need to, and so did not, observe the difference between implied-warranty claims against a party that had issued a written warranty, and implied-warranty claims against a seller relying on an arbitration clause in a sales contract. Randolph simply holds that because Wilson and Boyd analyzed and applied the "highly detailed and specific provisions of the Magnuson-Moss Act," those cases were "inapplicable to the court's analysis under the TILA and the ECOA."[1] 991 F.Supp. at 1425-26. Randolph does not imply that the court erred in Wilson and in Boyd in holding that the Magnuson-Moss Act prohibits the inclusion in a written warranty of a clause providing for binding arbitration.
Furthermore, the district court in Rhode v. E & T Investments, Inc., 6 F.Supp.2d 1322 (M.D.Ala.1998), held that the nonsignatory manufacturer could not rely on the arbitration clause in the installment sales contract. The court held that, to the extent that the complaint stated express-warranty claims against the seller, the Magnuson-Moss Act prevented the seller from invoking the arbitration clause in the sales contract, but, to the extent that the complaint stated implied-warranty claims against the seller, it could invoke the arbitration clause in the sales contract. Again, *998 Rhode provides no implication that a written warranty may include a provision requiring binding arbitration.
Wilson notes that it addresses a question of first impression regarding the application of the Magnuson-Moss Act to an attempt by a warrantor to invoke a provision providing for binding arbitration. We have found no other authority on point. Cf. Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 350 (3d Cir.1997), holding that, for purposes of an appeal under 9 U.S.C. § 16, "the informal dispute resolution procedure provided by Nissan pursuant to ... the Magnuson-Moss Warranty Act is not `arbitration' as contemplated by the FAA."
Relying on Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); and Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the dissent concludes that the Federal Arbitration Act ("FAA") applies in spite of the Magnuson-Moss Act's language preserving a consumer's right to a judicial forum. Those cases are readily distinguishable. The question in each of those cases was whether a statutory right of action provided by Congress superseded the FAA so as to prohibit the enforcement of arbitration agreements. In three of the five statutes treated, however, the plaintiff relied on statutory policy, not statutory language or legislative history.
In Mitsubishi Motors, the Court noted the intermediate appellate court's recognition of "the absence of any explicit support for such an exception [to the FAA] in either the Sherman Act or the Federal Arbitration Act," 473 U.S. at 628-29, 105 S.Ct. 3346, and concluded that "concerns of international comity [and other similar considerations] require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context," 473 U.S. at 629, 105 S.Ct. 3346. Thus, the Court held that international concerns required enforcement of arbitration clauses in regard to claims under the Sherman Act, 15 U.S.C. § 1 et seq., based in part on the absence of any language in the Sherman Act to support an exception of such claims from the operation of the FAA.
In McMahon, the Court rejected an argument that arbitration clauses in regard to cannot prevent adjudication of claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., noting that "there is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act. This silence in the text is matched by silence in the legislative history." 482 U.S. at 238, 107 S.Ct. 2332. In Gilmer, the Court rejected an argument that the FAA does not mandate enforcement of arbitration clauses so as to prevent litigation of claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. "Gilmer concedes that nothing in the text of the ADEA or its legislative history explicitly precludes arbitration."
In McMahon, the Court also rejected an argument that claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), are not subject to arbitration. Section 29(a) of the Securities Exchange Act, 15 U.S.C. § 78cc(a), "declares void `[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Act].'" 482 U.S. at 227, 107 S.Ct. 2332. Section 27, 15 U.S.C. § 78aa, gives the district courts of the United States "exclusive jurisdiction" of, among other things, "actions at law brought to enforce any liability or duty created by this title." 482 U.S. at 227, 107 S.Ct. 2332. McMahon's argument was that an arbitration clause constituted a waiver of § 27's grant of "exclusive jurisdiction" *999 to the federal district courts and therefore was void by operation of § 29(a). The Court, however, held that § 29(a)'s prohibition against waiver of "compliance" with the provisions of the Securities Exchange Act applies only to "the substantive obligations imposed by the Exchange Act," and that § 27 is not thereby implicated because it "does not impose any statutory duties." 482 U.S. at 228, 107 S.Ct. 2332. Rodriguez de Quijas applies the same reasoning to the Securities Act of 1933, 15 U.S.C. § 77l(2), overruling Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).
The Magnuson-Moss Act is different, both in text and in legislative history, as shown in Wilson, 954 F.Supp. at 1537-38. That Act provides that consumers "may bring suit for damages and other legal and equitable relief," 15 U.S.C. § 2310(d). It allows warranties to provide for "informal dispute settlement mechanisms," § 2310(a)(1), or "informal dispute settlement procedure[s]," § 2310(a)(3). It gives the Federal Trade Commission ("FTC") the authority to provide "minimum requirements" for such procedures, § 2310(a)(2). Such provisions, however, may require only that the consumer "resort to such procedure before pursuing any legal remedy," § 2310(a)(3)(C) (emphasis added). The legislative history bears out that such procedures are only "a `prerequisite,' not a bar, to suit in court." Wilson, 954 F.Supp. at 1538, quoting the remarks of Congressman Moss, one of the sponsors of the bill.
"The House report on the bill makes this point even clearer. The report states that `An adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding.'... This history reflects that it was Congress's intent that any non-judicial dispute resolution procedures would be nonbinding, and consumers would always retain the right of final access to court."
Id. (citation omitted).
The FTC has interpreted the Magnuson-Moss Act just as the court did in Wilson. It has provided that "`decisions of the [informal-dispute-settlement] mechanism shall not be binding on any person,'" and that "The mechanism shall inform the consumer ... that ... [i]f he or she is dissatisfied with its decision or warrantor's intended actions, or eventual performance, legal remedies, including use of small claims court, may be pursued.'" Id., 954 F.Supp. at 1538, quoting the FTC regulations. Further, the FTC responded to public comments by stating that "`reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act.'" 954 F.Supp. at 1539 (citation omitted).
In light of this clear authority stating that Congress has prohibited the use of binding arbitration clauses in written warranties, and the fact that this conclusion has been reached by the Federal agency charged with administering the Magnuson-Moss Act and by the only federal courts to have reached the question, we disagree with the dissent's conclusion that the United States Supreme Court cases cited above support a holding that the Magnuson-Moss Act does not prohibit the use of arbitration clauses in written warranties. Those cases were expressly based on the absence of any indication in the statutes in question, or in their legislative history, that Congress intended to prohibit the use of binding arbitration clauses in agreements governed by the statutes. As shown above, Congress has expressly indicated such an intent in the Magnuson-Moss Act.
As the court did in Wilson and Boyd, we hold that the Magnuson-Moss Act prohibits the inclusion in a written warranty of a provision calling for binding arbitration. For that reason, the general provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., are superseded by the *1000 subsequent and specific provisions in the Magnuson-Moss Act by which Congress has prohibited the inclusion in written warranties of clauses calling for binding arbitration.
The four actions before us present claims against a manufacturer, Southern Energy Homes, Inc., based on the manufacturer's written warranty. The written warranty contains a clause providing for binding arbitration.[2] In addition to alleging breach of the written warranty, the complaints allege claims based on other theories, such as fraud and breach of implied warranty. Southern Energy Homes has sought binding arbitration, but the only arbitration clause it relies upon appears in its written warranty. Under the Magnuson-Moss Act, this arbitration clause is unenforceable. The agency charged with promulgating rules under the Magnuson-Moss Act, the Federal Trade Commission, has stated that the Act prohibits a written warranty from even making "reference" to "any binding, non-judicial remedy." Boyd, supra, 981 F.Supp. at 1438, quoting 40 Fed.Reg. 60,168, 60,211 (1975) (emphasis added). Because the arbitration clause in the warranty provided by Southern Energy Homes cannot be enforced, it has no effect on the plaintiffs' other claims against Southern Energy Homes. The circuit courts correctly denied the motions filed by Southern Energy Homes to compel arbitration of the claims against it.
1970105AFFIRMED.
1970106AFFIRMED.
1970107AFFIRMED.
1970298AFFIRMED.
SHORES, KENNEDY, and COOK, JJ., concur.
HOUSTON, J., concurs specially.
HOOPER, C.J., and MADDOX, SEE, and LYONS, JJ., dissent.
HOUSTON, Justice (concurring specially).
Recently, in my special concurrence in Fidelity National Title Ins. Co. of Tennessee v. Jericho Management, Inc., 722 So.2d 740 (Ala.1998), I posed the following questions:
"What effect, if any, does [Art. IV, § 84, Constitution of Alabama of 1901] have on the public policy of this state? Does it restrict the legislature's power to enact provisions such as Ala.Code 1975, § 8-1-41?"
I then went on to state that "[t]hese are questions to be resolved at a future date in another case when the issue has been properly raised in the trial court and fully briefed in this Court." 722 So.2d at 745. Although the meaning and scope of § 84 was not raised or briefed in these present cases, I feel compelled, based on my own research, to state my views as to its effect on Alabama's arbitration laws.
*1001 At common law both pre- and post-dispute arbitration agreements are considered valid.[3] However, at common law the power to revoke an agreement to arbitrate always remains with the parties.[4] Once an award has been declared pursuant to such an agreement, if the parties do not consent to the arbitrator's decision then an action has to be brought to enforce the award.[5] Even then,
"equity will enforce [the award] specifically [only] if a contract between the parties in the same terms as the award would be specifically enforceable. Thus, an award requiring the conveyance of land will be specifically enforced, while one which calls merely for the payment of money will not be, because the remedy at law is adequate. In a suit in equity to enforce an award, discretionary defenses such as mistake, hardship, or lack of mutuality of performance are available to the defendant."[6]
Although the specific enforcement of an award is possible under the common law, specific enforcement of an agreement to arbitrate is not.[7] The origin of this hostility toward the enforcement of arbitration agreements is normally attributed to dictum by Lord Coke in Vynior's Case:[8] "[I]f I submit myself to an arbitriment ... yet I may revoke it for my act, or my words cannot alter the judgment of the law to make that irrevocable which is of its own nature revocable."[9] This statement became the foundation for the idea that "arbitration agreements, although not illegal, were nonetheless opposed to public policy because they tended to oust the courts of jurisdiction, and so violated `the spirit of the laws creating the courts.'"[10] Early American courts shared this position; those courts would enforce an arbitration agreement only if it was (1) a condition precedent to a lawsuit, and (2) it related only to value or to some other question of fact other than ultimate liability.[11] Against this historical backdrop, § 84 was written into the Alabama Constitution of 1819 and it was later carried forward in substantially the same form into each of Alabama's Constitutions.
Section 84 states: "It shall be the duty of the legislature to pass such laws as may be necessary and proper to decide differences by arbitrators to be appointed by the parties who may choose that mode of adjustment." Although there is a common-law procedure for dealing with arbitration agreements (as described above), it has been common for legislative bodies to enact laws regulating arbitration.[12] It appears, *1002 then, that § 84 was intended to be an "empowerment" provision, giving the legislature the express authority to regulate arbitration according to the usual practice.[13] No language in § 84 expressly abrogates the common law, and no language in that section can be construed as implicitly changing the common-law hostility toward the specific enforcement of arbitration agreements. It is significant that early arbitration cases heard by the Supreme Court of Alabama were decided on the common-law principles outlined above.[14] The statutes that were enacted in 1857[15] and 1923[16] reflected the legislature's power to regulate in this area of the law. The 1857 provisions set up a procedure to allow a post-dispute arbitration award to have the effect of a judgment, regardless of whether the parties consented. This changed the common law. However, the common-law rule prohibiting the specific enforcement of pre- or post-dispute arbitration agreements was unchanged by the 1857 provisions. Section 8-1-41(3) was merely a codification of the common-law rule. Therefore, in my view, § 8-1-41(3) does not violate the Alabama Constitution.
For these reasons, the specific enforcement of a predispute arbitration agreement (such as the one at issue in this present case) violates both Alabama statutory law and Alabama public policy. However, the Federal Arbitration Act, 9 U.S.C. § 1 et seq., preempts Alabama statutory law and, thus, renders specifically enforceable a predispute arbitration agreement contained in a contract that involves interstate commerce. See, e.g., Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala.1997); Lopez v. Home Buyers Warranty Corp., 670 So.2d 35 (Ala. 1995); Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala.1995). Any principled approach to resolving arbitration issues must necessarily include a recognition that state courts are bound by the constraints of the Supremacy Clause, Art. VI, United States Constitution, which allowed *1003 the United States Supreme Court to trump the decisions of state supreme courts in Allied-Bruce Terminix Cos. v. Dobson. See my special concurrence in Fidelity National, supra, and my dissent in Terminix International Co. v. Jackson, 723 So.2d 555 (Ala.1998). I emphasize again here what I recently stated in my special concurrence in Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 38 (Ala. 1998):
"I was one of the four Justices who concurred in the opinion in Allied-Bruce Terminix Cos. v. Dobson, 628 So.2d 354 (Ala.1993), which the United States Supreme Court reversed in Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Although I disagree with the majority of the United States Supreme Court in its Allied-Bruce interpretation of the Federal Arbitration Act as it applies to state courts, a majority opinion of that Court is part of the law I have taken an oath to uphold. See the second paragraph of Article VI of the Constitution of the United States. I agree with the belief expressed by Justice O'Connor in her special concurrence in Allied-Bruce, 513 U.S. at 283, 115 S.Ct. 834:
"`I continue to believe that Congress never intended the Federal Arbitration Act to apply in state courts, and that this Court has strayed far afield in giving the Act so broad a compass.'
"(Citations omitted.) I also agree with the dissenting opinions of Justice Scalia and Justice Thomas in Allied-Bruce. However, Justice O'Connor's belief and the dissenting opinions of Justice Scalia and Justice Thomas are not the law that I have taken an oath to uphold.
"I personalize Chief Justice Burger's special concurrence in Bifulco v. United States, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980):
"`The temptation to exceed [my] limited judicial role and to do what [I] regard as the more sensible thing is great, but it takes [me] on a slippery slope. [My] duty, to paraphrase Mr. Justice Holmes in a conversation with Judge Learned Hand, is not to do justice but to apply the law and hope that justice is done. The Spirit of Liberty: Papers and Addresses of Learned Hand 306-307 (Dilliard ed.1960).'
"447 U.S. at 401-02, 100 S.Ct. 2247 (Burger, C. J., concurring).
"As I have in the past, I continue to oppose the judicial enforcement of predispute arbitration agreements, because of the state policy expressed in Ala.Code 1975, § 8-1-41(3). Unless that section is determined to violate the Constitution of Alabama [and I have now concluded it does not] or the policy expressed by that section is changed by acts of the Alabama Legislature [and, to date, it has not been], I will continue my opposition to the extent I am allowed to do so by the Constitution of the United States as interpreted by the Supreme Court of the United States."
(Emphasis original.)
The United States Supreme Court has not specifically addressed the issues presented in this present case. However, the United States District Court for the Middle District of Alabama has. See Rhode v. E & T Investments, Inc., 6 F.Supp.2d 1322 (M.D.Ala.1998); Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D.Ala. 1997), affirmed, 127 F.3d 40 (11th Cir.1997) (table); Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala.1997). It is also significant to me that the United States Court of Appeals for the Eleventh Circuit affirmed the district court's judgment in Wilson, albeit without an opinion. Although I am not bound to follow the decisions of the federal courts that decided those cases, I nonetheless find the reasoning of the district court to be sound, at least on its face. Because of the strong public policy in this state against the specific enforcement of pre-dispute arbitration agreements, I will not go behind the reasonable *1004 decisions of these federal courts interpreting a federal statute as barring the specific enforcement of such agreements. Until the United States Supreme Court holds otherwise, I must conclude that the general provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., are superseded by the subsequent and specific provisions in the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq.
The majority opinion holds that the fraud and written- and implied-warranty claims are not arbitrable because the Magnuson-Moss Act renders unenforceable the arbitration provision included in the written warranty. Without an enforceable agreement to arbitrate, none of the plaintiffs' claims is arbitrable. The rationale of the majority opinion also means (given the adoption of the Wilson and Boyd rationales) that the fraud and implied-warranty claims would be arbitrable if Southern Energy could have invoked some arbitration provision other than the one in its written warranty. Therefore, I concur to affirm the trial court's denial of Southern Energy's motions to compel arbitration.
SEE, Justice (dissenting).
I respectfully dissent from the affirmance of the trial court's denial of arbitration in these cases. The main opinion would base the affirmance on Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D.Ala.1997), and Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala. 1997). In my view, Wilson and Boyd do not provide persuasive authority for denying arbitration of the plaintiffs' written- or implied-warranty claims arising under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (the "Magnuson-Moss Act"), or the plaintiffs' misrepresentation claims.

I.
In December 1995, the plaintiffs purchased mobile homes from Rose Discount Mobile Homes ("Rose"). The mobile homes had been manufactured by Southern Energy Homes, Inc. ("Southern Energy"). As a part of their purchases, the plaintiffs accepted written warranties from Southern Energy. The plaintiffs later filed actions against Southern Energy and Rose, alleging misrepresentation and alleging breach of express and implied warranties arising from the Magnuson-Moss Act. Southern Energy moved to compel arbitration, based on the arbitration clause appearing in the written warranties.[17] The trial court refused to compel arbitration, and Southern Energy filed these appeals. A majority of this Court affirms the denial of arbitration of the written-warranty claims, and of the implied-warranty and misrepresentation claims. The main opinion cites Wilson, 954 F.Supp. 1530,[18] and Boyd, 981 F.Supp. 1423.

*1005 II. Wilson v. Waverly Homes, Inc.

A. The High-Water Mark
In Wilson, 954 F.Supp. at 1537-40, the United States District Court for the Middle District of Alabama addressed the question whether the Magnuson-Moss Act, which provides a private right of action to consumers for breaches of express and implied warranties, precludes operation of the Federal Arbitration Act (the "FAA"). The district court analyzed the text of the Magnuson-Moss Act and analyzed the regulations promulgated pursuant to that Act. The district court concluded that although the Magnuson-Moss Act does not address arbitration or the FAA, that Act nonetheless precludes binding arbitration under the FAA: (1) because it provides a statutory right to "bring suit for damages and other legal and equitable relief ... in a court of competent jurisdiction," 15 U.S.C. § 2310(d)(1)(A); and (2) because it allows for nonbinding "informal dispute settlement mechanisms," 15 U.S.C. § 2310(a)(1). See Wilson, 954 F.Supp. at 1537-38. The district court noted that the legislative history of the Magnuson-Moss Act indicates that "`[a]n adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding.'" Id. at 1538 (quoting H.R. Rep. 93-1107, 93d Cong., 2d Sess. 41, reprinted in 1974 U.S.C.C.A.N. 7702, 7723). The district court further noted that the Federal Trade Commission (the "FTC") had rejected a proposal to allow warrantors to require binding arbitration. Id. at 1539. After noting that no other federal court had done so, the district court, using broad language, concluded that the Magnuson-Moss Act prevented arbitration of the express-and implied-warranty claims in Wilson. Id. at 1537, 1539.

B. The Partial Abandonment
In Boyd, 981 F.Supp. 1423, the district court abandoned the broad language of Wilsonthe language to the effect that the Magnuson-Moss Act precludes arbitration of all warranty claims arising under the Actand limited the application of Wilson to bar only arbitration of written-warranty claims. Id. at 1436 ("[T]he conclusion in [Wilson] that Congress intended in the Magnuson-Moss Act to preclude binding arbitration of warranty claims must be understood to be limited to written warranties ....") (emphasis omitted).[19] Recognizing the abundance of Supreme Court precedent requiring arbitration of claims arising under federal statutes similar to the Magnuson-Moss Act, the district court conceded that neither the Act's provision for the filing of an action in the federal court, nor the indication in the relevant legislative history that alternative dispute resolution should be a prerequisite to the filing of an action, precluded application of the FAA. Id. at 1437-38. The district court also recognized that the FTC had stated that a purchaser and a warrantor could agree to arbitrate claims, but that a warrantor may not place an arbitration clause in a written warranty.[20]
*1006 The district court held that for two reasons the Magnuson-Moss Act precludes operation of the FAA with respect to claims concerning written warranties that include arbitration clauses: (1) the provision in § 2310(a)(3)(C) for the incorporation of nonbinding settlement mechanisms in written warranties implies that binding arbitration is not proper for such warranties; and (2) a statement issued by the FTC stated that warrantors are prohibited from including a binding arbitration clause in a written warranty. Boyd, 981 F.Supp. at 1437-38. Thus, the district court's own substantially narrowed view of Wilsonon which the main opinion relies does not bar the application of the arbitration agreement to the plaintiffs' misrepresentation claims or to their implied-warranty claims. Although the district court has recently reaffirmed its view expressed in Boyd that the Magnuson-Moss Act precludes enforcement of arbitration agreements contained in written warranties, Rhode v. E & T Investments, Inc., 6 F.Supp.2d 1322, 1331 (M.D.Ala. 1998), the controlling Supreme Court precedents lead me to disagree with the Boyd rationale.

III. The Supreme Court's Analysis
In 1953, the Supreme Court of the United States held that a claim arising under the Securities Act of 1933 was not subject to arbitration, because arbitration, it said, was an inadequate forum in which to enforce such a statutory claim. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In an unbroken line of decisions starting in 1985, the Supreme Court has abandoned the view that arbitration is an inadequate forum and has consistently upheld the application of the FAA to claims arising under federal statutes. In Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, *1007 Inc., 473 U.S. 614, 638-40, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Supreme Court held that Sherman Act antitrust claims that concerned international transactions were subject to arbitration. The Court emphasized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Id. at 628, 105 S.Ct. 3346.

A. The Analytical Framework
In Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Supreme Court of the United States stated that the FAA's strong policy favoring arbitration clearly applies to claims arising under federal statutes:
"`[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals' should inhibit enforcement of the [FAA] `"in controversies based on statutes."' ...
"The [FAA], standing alone, ... mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the [FAA]'s mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.... If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent `will be deducible from [the statute's] text or legislative history,' ... or from an inherent conflict between arbitration and the statute's underlying purposes."
Id. at 226-27, 107 S.Ct. 2332 (emphasis added) (fifth set of brackets in original) (citations omitted). The Supreme Court applied this three-pronged testtext, legislative history, purposeto claims arising under the Securities Exchange Act of 1934. The Supreme Court noted that the text of the Securities Exchange Act does not expressly address arbitration, and it held that a statement in the Securities Exchange Act prohibiting a waiver of substantive rights does not create a conflict with the FAA. McMahon, 482 U.S. at 227-30, 107 S.Ct. 2332. The Supreme Court continued, holding that the legislative history of the Securities Exchange Act does not express a clear intent to preclude application of the FAA. Id. at 237-38, 107 S.Ct. 2332. Not finding a conflict between the underlying purpose of the Securities Exchange Act and the FAA, the Supreme Court held that securities claims are subject to binding arbitration. Id. at 230, 238, 107 S.Ct. 2332. Thus, in McMahon, the Supreme Court severely undermined the rationale of Wilko, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, that arbitration was an unsuitable forum for resolving statutory claims. Two years later in Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), the Supreme Court expressly overruled Wilko.
The Supreme Court next addressed the McMahon plaintiffs' claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), concluding that neither that statute nor its legislative history addresses arbitration. McMahon, 482 U.S. at 238, 107 S.Ct. 2332. The Supreme Court rejected the arguments that RICO's purpose to protect the public creates an irreconcilable conflict with the FAA. Id. at 239-40, 107 S.Ct. 2332. Thus, the Supreme Court concluded that civil RICO claims are also subject to binding arbitration. Id. at 242, 107 S.Ct. 2332.
In Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court applied the three-pronged test to determine whether claims arising under the Age Discrimination in Employment Act (the "ADEA") are subject to arbitration under the FAA. The Supreme Court noted that the plaintiff conceded that nothing in the text or in the legislative history of the *1008 ADEA precludes arbitration. Id. at 26-27, 111 S.Ct. 1647. The Supreme Court then assessed the arguments concerning the important social purposes of the ADEA, its provision for informal dispute resolution, and the potential for disparity in bargaining power between employers and employees. Id. at 27-33, 111 S.Ct. 1647. Rejecting these arguments, the Supreme Court concluded that there is no irreconcilable conflict between arbitration and the purposes of the ADEA. Thus, age-discrimination claims are subject to binding arbitration. Id. at 35, 111 S.Ct. 1647.

B. Application to Magnuson-Moss Claims
If the plaintiffs in these appeals are to bear their burden of establishing that Congress intended the Magnuson-Moss Act to preclude binding arbitration under the FAA, they must demonstrate such an intent from the text of the Magnuson-Moss Act, from its legislative history, or from an irreconcilable conflict between arbitration and the purposes of the Magnuson-Moss Act. McMahon, 482 U.S. at 226-27, 107 S.Ct. 2332. The plaintiffs rely on Wilson and Boyd to establish that none of their claims is subject to binding arbitration. Based on the analytical framework established by the Supreme Court for determining whether a statute clearly precludes arbitration, I disagree.
First, the text of the Magnuson-Moss Act does not expressly preclude arbitration. The plaintiffs rely on Boyd for the argument that the provision in 15 U.S.C. § 2310(a)(3) for the use of a nonbinding dispute-resolution procedure as a prerequisite for pursuing a written-warranty claim in court implies a statutory prohibition of binding arbitration of those claims. However, the Supreme Court noted in Gilmer, 500 U.S. at 27, 111 S.Ct. 1647, that the ADEA imposes a similar prerequisite that a claimant file a charge with the Equal Employment Opportunity Commission ("EEOC")before pursuing an action in court. The ADEA also requires the EEOC to engage in "`informal methods of conciliation, conference, and persuasion.'" Id. (quoting 29 U.S.C. § 626(b)). The Supreme Court nonetheless concluded that the ADEA's express provision for "out-of-court dispute resolution" is not inconsistent with the FAA, and it held that ADEA claims are subject to arbitration. Gilmer, 500 U.S. at 30, 35, 111 S.Ct. 1647. Thus, the express provision for one type of out-of-court settlement mechanism does not preclude another.
Second, the legislative history of the Magnuson-Moss Act does not express a clear intent to preclude enforcement of the FAA. In Boyd, 981 F.Supp. at 1439, the district court quoted the following from a Senate Report on the Magnuson-Moss Act:
"`For many years warranties have confused and misled the American consumer. A warranty is a complicated legal document whose full essence lies buried in myriads of reported legal decisions and in complicated State codes of commercial law. The consumer's understanding of what a warranty on a particular product means to him frequently does not coincide with the legal meaning.... Typically, a consumer today cannot bargain with consumer product manufacturers or suppliers to obtain a warranty or to adjust the terms of a warranty voluntarily offered. Since almost all consumer products sold today are typically done so with a contract of adhesion, there is no bargaining over contractual terms.'"
(Quoting S. Rep. 93-151, 93d Cong., 1st Sess., as quoted in 40 Fed.Reg. 60,168 (1975)). While expressing the concern that written warranties are often legalistic and complex, the Senate Report quoted above says absolutely nothing about arbitration. If, as the Supreme Court of the United States held in Mitsubishi Motors, 473 U.S. at 633-34, 105 S.Ct. 3346, arbitration panels are sufficiently sophisticated to resolve complex antitrust claims arising out of the sale of automobiles in international commerce, I fail to see how an arbitration *1009 panel would be unable to decipher a warranty arising from the sale of a mobile home in Alabama.
Moreover, the main opinion's suggestion that the legislative history of the Magnuson-Moss Act more clearly indicates an congressional intent to prohibit arbitration than does the legislative history of the Securities Exchange Act of 1934 (dealt with in McMahon) is untenable. A comparison of the legislative history of the Magnuson-Moss Act and the district court's interpretation of that history in Wilson, with the legislative history of an amendment to the Securities Exchange Act of 1934 and the Supreme Court's interpretation of that history in McMahon is revealing. The portion of the main opinion's indented quotation that constitutes legislative history contains this statement: "`An adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding.'" 732 So.2d at 999 (quoting Wilson, 954 F.Supp. at 1538 (quoting H.R.Rep. 93-1107, 93d Cong., 2d Sess. 41, reprinted in 1974 U.S.C.C.A.N. 7702, 7723)). This statement is not irreconcilable with the purpose of the FAAto allow civil actions to be resolved by an efficient, impartial arbitration panel. The portion of the main opinion's indented quotation that constitutes the district court's interpretation of the legislative history quoted above is as follows: "`This history reflects that it was Congress's intent that any non-judicial dispute resolution procedures would be nonbinding, and consumers would always retain the right of final access to court.'" 732 So.2d at 999 (quoting Wilson, 954 F.Supp. at 1538). This interpretation is inconsistent with McMahon.
In McMahon, 482 U.S. at 236-37, 107 S.Ct. 2332, the Supreme Court quoted the following legislative history of a 1975 amendment to the Securities Exchange Act of 1934:
"`The Senate bill amended section 28 of the Securities Exchange Act of 1934 with respect to arbitration proceedings between self-regulatory organizations and their participants, members, or persons dealing with members or participants. The House amendment contained no comparable provision. The House receded to the Senate. It was the clear understanding of the conferees that this amendment did not change existing law, as articulated in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), concerning the effect of arbitration proceedings provisions in agreements entered into by persons dealing with members and participants of self-regulatory organizations.'"
(Quoting H.R. Conf. Rep. No. 94-229, 94th Cong., 1st Sess. 111, reprinted in 1975 U.S.C.C.A.N. 179, 342) (emphasis added). Despite the express language indicating a congressional approval of Wilko's holding against arbitration, the Supreme Court held that Congress did not intend to bar enforcement of all predispute arbitration agreements. Given the Supreme Court's pro-arbitration interpretation of the Conference Report to the Securities Exchange Act, which expressly deals with arbitration, I cannot accept the district court's anti-arbitration interpretation of the House Report to the Magnuson-Moss Act, which does not expressly deal with arbitration. Under the Supreme Court's decision in McMahon, 482 U.S. at 227, 107 S.Ct. 2332, the legislative history of the Magnuson-Moss Act does not demonstrate an intent "to limit or prohibit waiver of a judicial forum."
Third, there is no irreconcilable conflict between arbitration an the purposes of the Magnuson-Moss Act. The purposes of the Magnuson-Moss Act are "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). To these, the Boyd court added a concern for the inequality of bargaining power between warrantors and consumers. Boyd, 981 F.Supp. at 1439. One of the fundamental *1010 purposes of the Securities Act of 1933 and of the Securities Exchange Act of 1934 is the disclosure of information to potential investors. Basic Inc. v. Levinson, 485 U.S. 224, 234, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The Supreme Court has held that claims brought under both securities acts are subject to arbitration. See Rodriguez de Quijas, 490 U.S. at 485-86, 109 S.Ct. 1917 (holding that claims brought under the Securities Act of 1933 are subject to arbitration); McMahon, 482 U.S. at 242, 107 S.Ct. 2332 (holding that claims brought under the Securities Exchange Act of 1934 are subject to arbitration). Further, in McMahon, 482 U.S. at 230-31, 107 S.Ct. 2332, the Supreme Court expressly rejected the "inequality of bargaining power" argument as a means of creating an irreconcilable conflict between the Securities Exchange Act and the FAA, holding that assertions of unequal bargaining power should be addressed in the context of the particular facts of each individual case.[21] Thus, there is no irreconcilable conflict between binding arbitration and the purposes of the Magnuson-Moss Act.
The plaintiffs have not borne their burden under the Supreme Court's three-pronged test to show from the text of the Magnuson-Moss Act, from its legislative history, or from an irreconcilable conflict between that act and arbitration, that it was the clear intent of Congress to preclude enforcement of the FAA. Nonetheless, the main opinion relies on statements by the FTC with respect to the following regulation:
"A warrantor shall not indicate in any written warranty or service contract either directly or indirectly that the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute concerning the warranty or service contract.... Such statements are deceptive since [15 U.S.C. § 2310(d)] gives state and federal courts jurisdiction over suits for breach of warranty and service contracts."
16 C.F.R. § 700.8 (1998) (emphasis added). This regulation rejects binding arbitration because the Magnuson-Moss Act grants to the courts jurisdiction over warranty claims brought under the Act. See 15 U.S.C. § 2310(d) (investing "any court of competent jurisdiction in any State ... or... an appropriate district court of the United States" with jurisdiction over Magnuson-Moss Act claims).
Although reasonable deference is due an interpretation of a statute by an agency charged with administering that statute, no such deference is due when the Supreme Court has expressly rejected the rationale on which the agency interpretation is based. See generally Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[22] In *1011 McMahon, 482 U.S. at 227-30, 107 S.Ct. 2332, the plaintiff argued that an arbitration clause was ineffective to waive the provisions of § 27 of the Securities Exchange Act that the "`district courts of the United States ... shall have exclusive jurisdiction of violations of this title.'" Id. at 227, 107 S.Ct. 2332. The Supreme Court explained that "`[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.'" McMahon, 482 U.S. at 229, 107 S.Ct. 2332 (quoting Mitsubishi Motors, 473 U.S. at 628, 105 S.Ct. 3346). Accord Gilmer, 500 U.S. at 29, 35, 111 S.Ct. 1647 (holding that ADEA claims are arbitrable notwithstanding that 29 U.S.C. § 626(c)(1) provides for a judicial forum for relief); Rodriguez de Quijas, 490 U.S. at 485-86, 109 S.Ct. 1917 (holding that Securities Act of 1933 claims are arbitrable notwithstanding that 15 U.S.C. § 77v(a) provides a judicial forum for relief); McMahon, 482 U.S. at 242, 107 S.Ct. 2332 (holding that RICO claims are arbitrable notwithstanding that 18 U.S.C. § 1964 provides a judicial forum for relief); Mitsubishi Motors, 473 U.S. at 640, 105 S.Ct. 3346 (holding that antitrust claims are arbitrable notwithstanding that 15 U.S.C. § 29 presumes a judicial forum for relief). Moreover, in McMahon, 482 U.S. at 227-30, 107 S.Ct. 2332, the Supreme Court reached its conclusion that the Securities Exchange Act's provision of a judicial forum does not imply the preclusion of a nonjudicial forum, notwithstanding the fact that § 27 of the Securities Exchange Act expressly prohibits any waiver of compliance with the Securities Exchange Act. Therefore, because the Magnuson-Moss Act does not even arguably prohibit a waiver of a judicial forum, the conclusion is even more compelling that the Magnuson-Moss Act allows for the binding arbitration of warranty claims.[23] The main opinion and the plaintiffs note that in response to public comments addressing the adoption of its regulation, the FTC has stated:
"Several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration). The Rule does not allow this for two reasons. First, as the Staff Report indicates, Congressional intent was that decisions of [15 U.S.C. § 2310] Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by [§ 2310], the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but nonjudicial, proceeding. The Commission is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers."
40 Fed.Reg. 60,168, 60,210 (1975) (emphasis added). Thus, the FTC concluded that the Magnuson-Moss Act's express provision for nonbinding settlement mechanisms implied that binding arbitration of warranty claims is precluded. In addition, the FTC stated that it has not provided guidelines for arbitration and does not believe any guidelines could sufficiently protect buyers of products with warranties.
In Gilmer, 500 U.S. at 27-33, 111 S.Ct. 1647, the Supreme Court acknowledged that the ADEA provided for informal dispute resolution. Nonetheless, the Supreme Court interpreted the ADEA's express provision of nonbinding settlement *1012 mechanisms as not inconsistent with the strong federal policy favoring arbitration. Id. at 29, 111 S.Ct. 1647. Similarly, the Magnuson-Moss Act's express provision for nonbinding settlement mechanisms is not inconsistent with the strong federal policy favoring arbitration.
In McMahon, 482 U.S. at 234 n. 3, 107 S.Ct. 2332, the majority of the Supreme Court rejected the argument made in dissent that the existence of a long-established SEC rule prohibiting arbitration[24] required the Supreme Court to interpret the Securities Exchange Act to preclude arbitration. See id. at 262-63 nn. 21 & 22, 107 S.Ct. 2332 (Blackmun, J., concurring in part and dissenting in part) (noting that the SEC's rule, which prohibited arbitration, protected the buyers of securities). The majority in McMahon noted, and the SEC agreed, that the SEC's statements were premised on the former understanding expressed in Wilko, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, that arbitration agreements for securities claims were not enforceable. This former mistrust of arbitration has been replaced by decisions like Mitsubishi Motors, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444, and Rodriguez de Quijas, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526, which expressly overruled Wilko. Further, the Supreme Court, in McMahon, 482 U.S. at 233-34, 107 S.Ct. 2332, noted that since the 1953 Wilko decision, private organizations had promulgated comprehensive rules to govern arbitration and that Congress had granted the SEC authority to review such rules. Thus, the previously expressed concern for buyers of securities no longer justified avoidance of the FAA. McMahon, 482 U.S. at 233-34, 107 S.Ct. 2332.
Similarly, the FTC's statements against arbitrating Magnuson-Moss Act claims predate Mitsubishi Motors, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444, McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185, Rodriguez de Quijas, 490 U.S. 477, 109 S.Ct. 1917, and Gilmer, 500 U.S. 20, 111 S.Ct. 1647, and reflect the now defunct rationale of Wilko. These later decisions uniformly recognize that "`we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals' should inhibit enforcement of the [FAA] `"in controversies based on statutes."'" McMahon, 482 U.S. at 226, 107 S.Ct. 2332 (citations omitted). Further, although the FTC, unlike the SEC in McMahon, 482 U.S. at 233-34, 107 S.Ct. 2332, has not expressly approved a comprehensive set of arbitration rules, the arbitration clause at issue in these present cases expressly incorporates "the Commercial Rules of Arbitration of the American Arbitration Association," which are well established and uniformly accepted by the federal courts. See, e.g., Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (noting the simpler and more efficient operation of the American Arbitration Association's rules); Southland Corp. v. Keating, 465 U.S. 1, 4, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (enforcing an arbitration clause that expressly incorporated the "Rules of the American Arbitration Association"); Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 383 (11th Cir.1996) (enforcing an arbitration clause *1013 that expressly incorporated the "Rules of the American Arbitration Association").[25]
Finally, although the FTC does not have express statutory authority to regulate all the rules of the American Arbitration Association, it does have express authority to regulate the content of informal settlement provisions included in written warranties. 15 U.S.C. § 2310(a). Accordingly, the FTC, like the SEC, has the authority to ensure that the arbitration process adequately protects consumers who purchase products with warranties. Thus, I conclude that the Magnuson-Moss Warranty Act does not evidence a clear congressional intent to prohibit the arbitration of written or implied warranty claims.

IV. Conclusion
I would conclude that under that portion of Wilson still embraced by Boyd, the plaintiffs' misrepresentation and implied-warranty claims are subject to arbitration. Further, I would conclude that under the analytical framework established by the Supreme Court in McMahon, the plaintiffs' written-warranty claims are subject to arbitration. Accordingly, I would reverse the orders of the trial court and order arbitration in these cases.
I therefore dissent.
HOOPER, C.J., and MADDOX and LYONS, JJ., concur.
NOTES
[1] The Randolph court included the following discussion of Wilson and Boyd:

"In Boyd, however, the court concluded that non-written and implied warranty claims arising under the Magnuson-Moss Act could be subject to arbitration.... In other words, the court found that even though Congress intended to preclude arbitration of written warranty claims under the Magnuson-Moss Act, it did not intend to preclude arbitration of non-written or implied warranty claims....
"Significantly, these findings were made even though the Congressional intent of the Magnuson-Moss Act was to `improve the adequacy of information available to consumers, [and] prevent deception.' ... The court in Waverlee Homes rested its findings on other, specific provisions of the Act, not solely on Congress' stated intent in passing the Act. If it had, Boyd may have been decided differently. Indeed, in Boyd, the court ordered the arbitration of non-written and implied warranty claims arising under the Magnuson-Moss Act, ... even though it declined to do so for written warranties in Waverlee Homes."
Randolph, 991 F.Supp. at 1425 (emphasis and brackets in Randolph). As we read this passage from Randolph, the district court was questioning the Boyd court's decision to allow arbitration of nonwritten- and implied-warranty claims. Randolph questions Wilson's reliance on statutory language rather than on Congressional intent, which, Randolph implies, would support a holding that the Magnuson-Moss Act prohibits binding arbitration of nonwritten- and implied-warranty claims under that Act. If Boyd had been "decided differently," it would have held that the implied-warranty claims were not subject to arbitration.
[2] We do not read the warranty as providing for nonbinding informal dispute resolution as contemplated by the Magnuson-Moss Act. The warranty tells the customer to first communicate with the retailer regarding any problem, then the "appropriate division" of Southern Energy, then Southern Energy's corporate headquarters, and then the "manufactured housing agency for your state." This section of the warranty concludes: "If your problems are not satisfactorily remedied through the steps set out above, you are entitled to have the dispute settled through binding arbitration as set out below:

"In the event of any dispute or claim arising out of or in connection with the design, construction, warranty or repair of any product or component supplied by the Manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not `new', any representations, promises, undertakings or covenants made or allegedly made by the Manufacturer in connection with or arising out of any transaction or undertaking between the Manufacturer and any purchaser, or subsequent purchaser, the Manufacturer and the purchaser of this product agree to submit such dispute or claim to binding arbitration...."
[3] Sidney P. Simpson, Specific Enforcement of Arbitration Contracts, 83 U. Pa. L.Rev. 160 (1934).
[4] Simpson, supra, note 1, at 162. See also Osmond K. Fraenkel, Procedural Aspects of Arbitration, 83 U. Pa. L.Rev. 226 (1934); Sabra A. Jones, Historical Development of Commercial Arbitration in the United States, 12 Minn. L.Rev. 240, 241 (1928); Paul L. Sayre, Development of Commercial Arbitration Law, 37 Yale L.J. 595, 601-03 (1929); Earl S. Wolaver, The Historical Background of Commercial Arbitration, 83 U. Pa. L.Rev. 132, 138-44 (1934).
[5] Henry C. Strickland et al., Modern Arbitration for Alabama: A Concept Whose Time Has Come, 25 Cumb. L.Rev. 59, 74-75 (1994). See also Home Ins. Co. of New York v. Morse, 87 U.S. (20 Wall.) 445, 450-53, 22 L.Ed. 365 (1874).
[6] Simpson, supra, note 1, at 160 (footnotes omitted).
[7] Simpson, supra, note 1, at 160. See Tobey v. County of Bristol, 3 Story 800 (C.C.D.Mass. 1845).
[8] 8 Co. 80a, 81b (K.B.1609). See Simpson, supra, note 1, at 162; Wolaver, supra, note 2, at 138.
[9] 5 Holdsworth, History of English Law 293 (1924).
[10] Simpson, supra, note 1, at 162 (citing Scott v. Avery, 5 H.L. Cas. 811, 853 (1856)) (footnotes omitted).
[11] Simpson, supra, note 1, at 163. See also Morse, 87 U.S. (20 Wall.) at 452.
[12] In fact, statutes regulating arbitration were enacted as early as 1698. See Simpson, supra, note 1, at 164; Wolaver, supra, note 2, at 143.
[13] See Strickland et al., supra, note 3, at 81.
[14] Fuerst v. Eichberger, 224 Ala. 31, 33, 138 So. 409, 410 (1931) (stating that "a court has no authority, merely on motion, to enter up as its judgment, a common-law award, unless by the consent of the parties litigant solemnly given in judicio" and that "a common-law award may be made the basis of an appropriate action thereon"); Headley v. Aetna Ins. Co., 202 Ala. 384, 385, 80 So. 466, 467 (1918) (stating that "[a] general provision in a contract for the arbitration of any dispute which may arise thereunder does not oust the courts, nor bar a suit either at law or equity"); Western Assur. Co. v. Hall, 112 Ala. 318, 324, 20 So. 447, 448 (1896) (stating that arbitration clauses that go to the issue of liability as opposed to value or amount are void as against public policy); Meaher v. Cox, Brainard & Co., 37 Ala. 201, 215 (1861) (stating that "[n]o mere agreement to refer a controversy to arbitration, can oust the proper courts of their jurisdiction"); Byrd v. Odem, 9 Ala. 755, 766 (1846) (commenting that statutes regulating arbitration do not abrogate the common-law understanding); Martin v. Chapman, 1 Ala. 278, 282-83 (1840) (acknowledging the ability of the parties to revoke an arbitrator's authority); Bozeman v. Gilbert, 1 Ala. 90, 91 (1840) (stating that "[a] mere agreement to decide a controversy by arbitration cannot be enforced at law, or in equity, because no one can effectually waive his right to have his suits determined at the proper Courts provided by the laws of his country"); Lamar v. Nicholson, 7 Port. 158, 166 (Ala.1838) (noting that common-law arbitration principles apply unless parties follow strict statutory requirements); Stone v. Dennis, 3 Port. 231, 239 (Ala.1836) (holding that "it is clear, that a party, by agreeing to submit his case to arbitration, does not loose [sic] his remedy at law, unless, at the time of the commencement of his suit, there is an arbitration pending, or an award has actually been made; and a contract, absolutely to waive one's right to go to law, is void, as against public policy").
[15] Ala.Code 1975, §§ 6-6-1 to 6-6-16.
[16] Ala.Code 1975, § 8-1-41. This section reads: "The following obligations cannot be specifically enforced: ... (3) An agreement to submit a controversy to arbitration...."
[17] The arbitration clause provides:

"If your problems are not satisfactorily remedied through the steps set out above, you are entitled to have the dispute settled though binding arbitration as set out below:
"In the event of any dispute or claim arising out of or in connection with the design, construction, warranty or repair of any product or component supplied by the Manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not `new', any representations, promises, undertakings or covenants made or allegedly made by the Manufacturer in connection with or arising out of any transaction or undertaking between the Manufacturer and any purchaser, or subsequent purchaser, the Manufacturer and the purchaser of this product agree to submit such dispute or claim to binding arbitration, pursuant to the provisions of 9 U.S.C. [§] 1, et seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing."
[18] I note that the United States Court of Appeals for the Eleventh Circuit affirmed the result in Wilson v. Waverlee Homes, Inc., 127 F.3d 40 (11th Cir.1997), without issuing an opinion. The Eleventh Circuit's choice not to issue an opinion indicates no approval of the legal rationale of Wilson, most of which the district court itself has subsequently limited. See DeShong v. Seaboard Coast Line R.R., 737 F.2d 1520, 1523-24 (11th Cir.1984) (stating that the mere affirmance of the result of a district court opinion "cannot be viewed as binding precedent"); Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala.1997) (interpreting the broad statements in Wilson concerning the Magnuson-Moss Act's displacement of the Federal Arbitration Act as barring enforcement of only those arbitration clauses contained in written warranties).
[19] In Boyd, 981 F.Supp. at 1436, the plaintiffs argued that the broad language of Wilson barred arbitration of both implied- and written-warranty claims. The district court responded by expressly limiting Wilson to preclude only arbitration of written-warranty claims. Boyd, 981 F.Supp. at 1436 ("[T]he... plaintiffs rely heavily on this court's decision in [Wilson] to urge the ... conclusion" that the Magnuson-Moss Act or its legislative history reflects a congressional intent to preclude arbitration of written-and implied-warranty disputes); id. ("Accordingly, the conclusion in [Wilson] that Congress intended in the Magnuson-Moss Act to preclude binding arbitration of warranty claims must be understood to be limited to written warranties....") (emphasis omitted).
[20] The district court quoted the following statement by the FTC concerning the informal dispute settlement "Mechanism" and arbitration:

"`[T]here is nothing in [the rule regarding informal dispute settlement mechanisms] which precludes the use of any other remedies by the parties following a Mechanism decision. The warrantor, the Mechanism, or any other group can offer a binding arbitration option to consumers who are dissatisfied with Mechanism decisions or warrantor intentions. However, reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act.'"
Boyd, 981 F.Supp. at 1437-38 (quoting 40 Fed.Reg. 60,168, 60,211 (1975)) (emphasis added). As the main opinion recognizes, 732 So.2d at 996, the regulation quoted above approves post-dispute agreements to arbitrate warranty claims, but not predispute arbitration agreements contained in written warranties. The legal significance of the regulation, under Supreme Court precedent, however, is not that some arbitration agreements are reached predispute and others are reached post-dispute, but that by embracing any arbitration agreements, the FTC undermined the argument that there is an "inherent conflict" between arbitration and the underlying purposes of the Magnuson-Moss Act. See Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (requiring arbitration of statutory claims where there is no showing of, among other things, "an inherent conflict between arbitration and the statute's underlying purposes").
Justice Houston, in his special concurrence, 732 So.2d at 1000, conducts an extensive analysis of § 84 of the Constitution of Alabama of 1901, concluding that it leaves unchanged the common law bias against the specific enforcement of agreements to arbitrate, including "predispute" arbitration agreements. This analysis is consistent with the traditional bias against predispute agreements to arbitrate reflected in Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Although the rationale of the common-law rule embodied in Wilko is appealing, the Supreme Court of the United States expressly overruled Wilko, interpreting federal law as abandoning the traditional bias against predispute arbitration agreements. Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Further, in Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court recognized the strong federal policy favoring the enforcement of the FAA, stating "that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." In my view, the FAA, the modern Supreme Court precedents, and the strong federal policy favoring arbitration compel the conclusion that the claims in these appeals are subject to arbitration. U.S. Const. art. VI, cl. 2.
[21] I note that although the plaintiffs argue that they did not voluntarily agree to the arbitration clause in the warranty, they nonetheless attempt to enforce the warranty against Southern Energy. This position is untenable in light of this Court's statement in Ex parte Dyess, 709 So.2d 447, 451 (Ala. 1997): "To enforce that portion of the contract and not to enforce the arbitration clause would produce a result inconsistent with the Federal Arbitration Act and with decisions of the United States Supreme Court."
[22] In Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778, the Supreme Court stated:

"When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."
(Footnotes omitted.) The Supreme Court also noted that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Id. at 843 n. 9, 104 S.Ct. 2778. Although the Magnuson-Moss Act is silent as to arbitration, the FAA clearly provides that arbitration clauses "shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2, without any exemption for arbitration clauses contained in written warranties.
[23] In Boyd, 981 F.Supp. at 1437, the district court acknowledged that 15 U.S.C. § 2310(d)'s grant of jurisdiction to federal and state courts did not evidence a congressional purpose to preclude arbitration.
[24] SEC Rule 15c2-2, 17 C.F.R. § 240.15c2-2 (1986), prohibited the use of arbitration clauses to bind investors to arbitrate future disputes as did several SEC Exchange Act Releases. See, e.g., Broker-Dealers Concerning Clauses in Customer Agreements Which Provide for Arbitration of Future Disputes, SEC Exchange Act Rel. No. 15984 (July 2, 1979), 44 Fed.Reg. 40,462, 40,464 ("Requiring the signing of an arbitration agreement without adequate disclosure as to its meaning and effect violates standards of fair dealing with customers and constitutes conduct that is inconsistent with just and equitable principles of trade."); Implementation of an Investor Dispute Resolution System, SEC Exchange Act Rel. No. 13470 (Apr. 26, 1977) [1977-1978 Transfer Binder] (CCH) Fed. Sec. L. Rep. ¶ 81,136, at 87,907 ("Customer agreements to arbitrate, at the instance of a firm, in margin agreements or elsewhere, should be prohibited.").
[25] The SEC, which has statutory authority to oversee the arbitration rules issued by self-regulatory organizations ("SROs"), such as the National Association of Securities Dealers ("NASD"), has also recognized the use of the American Arbitration Association and its rules to resolve securities claims. See, e.g., Self-Regulatory Organizations; Order Approving Proposed Rule Change by National Association of Securities Dealers, Inc. Relating to the Failure to Honor Settlement Agreements Obtained in Connection With an Arbitration or Mediation, Exchange Act Rel. No. 34-36088 [1994-95 Transfer Binder] Fed. Sec. L. Rep. (Aug. 10, 1995) (noting that an NASD resolution requiring payment of arbitration awards "applies to awards rendered in NASD sponsored arbitration, as well as arbitration sponsored by the American Arbitration Association (`AAA') and other SROs"); Randstad Staffing Services, L.P., SEC No-Action Letter, [1994-95 Transfer Binder] Fed. Sec. L. Rep. (Aug. 31, 1995) (recognizing use of the rules of the American Arbitration Association in relation to claims arising from a stock-option plan).